[5 NYS3d 678]

In the Matter of BRITTANY A., a Person Alleged to be a Juvenile Delinquent, Respondent.

Family Court, Clinton County, January 13, 2015

**APPEARANCES OF COUNSEL**

*James J. Coffey*, *County Attorney*, Plattsburgh (*Van Crockett* of counsel), for petitioner.

*Matthew E. Douthat*, Plattsburgh, for respondent.

*Keith M. Bruno*, Plattsburgh, for Cherilyn B., nonparty.

**OPINION OF THE COURT**

TIMOTHY J. LAWLISS, J.

Clinton County alleges that on November 4, 2014, Brittany A., a 15-year-old female, committed acts which, if committed by an adult, would constitute the crime of making a terroristic threat (Penal Law § 490.20), by threatening to "shoot up" the Plattsburgh Senior High School and then shoot the high school principal. On December 4, 2014, the court conducted a fact-finding hearing and based upon the evidence presented, the court makes the following findings of fact and reaches the following conclusions of law.

On behalf of the County, Mary,[1] a 15-year-old female who attends ninth grade at the Plattsburgh Senior High School, testified that she and Brittany went to school together, lived in the same trailer park, had mutual friends and spoke to each other one or two times per day prior to the commencement of this action. On the evening of November 4th, Brittany and John, a teenage male, came to Mary's bedroom window and engaged Mary in a conversation. Sally, another 15 year old who attends tenth grade at Plattsburgh Senior High School, was also present during a portion of the conversation. During this conversation, Mary was inside her bedroom and the other teenagers were outside of her bedroom window. Brittany stated that she was getting a gun from John and that she planned to go to school to shoot up other students and the principal. Based upon the manner in which Brittany made these statements, Mary took the threats seriously. During this same evening, within Mary's vision, Brittany obtained a BB gun from John and started shooting at street signs, houses, people riding

---

1. The names of the witnesses have been changed to protect their privacy as each witness was a minor at the time of the proceeding.

bicycles, stray animals, passing cars and a bulldozer.[2] Mary's testimony was both credible and reliable.

On behalf of the County, Sally testified that she, Brittany and John were outside of Mary's bedroom window on the evening of November 4th and that Brittany made a comment to the effect that Brittany was going to get a gun from John and was going to bring the gun to school. Sally thought Brittany was only joking. Based upon all the evidence presented, the court finds that Sally was present for a portion of the conversation involving Brittany, John and Mary, but was not present for the entire conversation. Sally's testimony was credible, but of limited value as she was not present during the entire conversation.

On behalf of the respondent, John testified that on the evening of November 4th he was with Brittany, Mary and Sally, as well as others at various times. At one point during the evening Brittany stated that she was going to bring a gun to school and shoot it up, which John understood to be a joke. John saw Brittany shooting a BB gun during that evening.

On November 5, 2014, in the presence of her mother, Brittany signed a written voluntary statement. In her statement, Brittany stated that on the evening of November 4, 2014, before going to Mary's home, she told John and Sally that she was going to modify a BB gun to look like a real gun and bring it to school. John and Sally laughed at her comment. Brittany acknowledges that she did go to Mary's home and Mary opened her bedroom window so they could all talk. Brittany acknowledged that she did obtain a BB gun from John, shot at a dog in the park and shot at a boy twice while he was riding his bike. Brittany also acknowledged that she shot at a sign and a garbage can. In her statement, Brittany neither admits nor denies nor even references making any statement in Mary's presence about bringing a gun to school.

Based upon the totality of the evidence, the court finds that on the evening of November 4, 2014, Brittany did threaten to bring a gun to school, to shoot the gun at school and to shoot

---

**2.** Pursuant to a separate petition, as a result of Brittany's acts with the BB gun, Brittany was found to have committed acts which, if committed by an adult, would constitute the crimes of criminal mischief in the third degree (Penal Law § 145.05) and reckless endangerment in the second degree (Penal Law § 120.20). Additionally, Brittany was found to have committed the offense of unlawful possession of a weapon by a person under 16 (Penal Law § 265.05).

the high school principal. These statements were made to at least two people, Mary and John; and that a person listening to Brittany's comments could reasonably believe that Brittany was serious. In relevant part, Penal Law § 490.20 states that a person is guilty of making a terroristic threat when, "with intent to intimidate . . . a civilian population, . . . he or she threatens to commit or cause to be committed a specified offense and thereby causes a reasonable expectation or fear of the imminent commission of such offense." (Penal Law § 490.20 [1].) The court finds that the petitioner has established in this case, beyond a reasonable doubt, that Brittany threatened to commit crimes, including assault in the second degree. (*See* Penal Law § 120.05 [2].) The court further finds that Brittany did so in a manner that caused a reasonable expectation or fear of the imminent commission of the crimes. Whether or not Brittany actually intended to carry out her threat is not relevant because it is not a defense that the person making the threat did not have the intent or capability of committing it. (*See* Penal Law § 490.20 [2].) It is also not a defense that the threat was not made to the person that was the subject of the threat. (*See* Penal Law § 490.20 [2].)

New York, as opposed to other jurisdictions, does not impose criminal liability on individuals who engage in conduct with reckless disregard of the risk of causing terror to another. (*See e.g.* Ga Code Ann § 16-11-37 [Georgia]; Minn Stat Ann § 609.713 [Minnesota]; Neb Rev Stat § 28-311.01 [Nebraska]; NJ Stat Ann 2C:12-3 [New Jersey]; 18 Pa Cons Stat Ann § 2706 [Pennsylvania].) Rather, in New York, criminal liability is limited to threats that are made with the specific intent to intimidate a civilian population. (*See* Penal Law § 490.20 [1].)[3]

Therefore, this case ultimately turns on the factual question of whether Brittany intended to intimidate a civilian population when Brittany made her threats. There are a number of ways intent to intimidate a civilian population could be established. Certainly, intent could be easily inferred if Brittany made the threats directly to an employee of the school district, a law enforcement official or another similarly situated individual who would be compelled to act on the threat. Similarly, intent could be easily inferred if Brittany had specifically asked or instructed her friends to relay the threat to

**3.** This analysis is limited to allegations that the actor made a threat to intimidate a civilian population. Penal Law § 490.20 and other sections of the Penal Law also impose criminal liability for other types of threats.

school officials or law enforcement. In this case, there is no claim that Brittany made these threats to anyone other than her teenage friends and there is no claim that Brittany asked or instructed her friends to relay the comments to others. Of course, the County has the burden to prove each element of the crime beyond a reasonable doubt. (Family Ct Act § 342.2 [2].) The court concludes that the County failed to meet its burden with respect to this element. A private conversation between immature teenage friends, without more, does not establish the element of intent to intimidate a civilian population.

Accordingly, the above captioned petition is hereby dismissed with prejudice.